USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 96-1638 BANK OF NEW ENGLAND CORPORATION, Defendant, Appellant, v. LACY G. NEWMAN, Plaintiff, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ James Donnell with whom Andrews & Kurth L.L.P. was on brief for _____________ _______________________ appellant. George F. Parker, III with whom Lawrence J. Cohen and Badger, ______________________ __________________ _______ Dolan, Parker & Cohen were on brief for appellee. _____________________ ____________________ December 16, 1996 ____________________ ALDRICH, Senior Circuit Judge. The agreed question ____________________ in this appeal from the bankruptcy court is whether security for an employer's breach of contract posted following the execution of a written employment contract on November 1, 1990, was security for that, or was security for an antecedent debt within 11 U.S.C. 547(b) because an oral contract had already been made in June. If it was June, the security was invalid as a preference -- November 1 being less than 90 days before the employer's filing under Chapter 7 of the Bankruptcy Code on January 7, 1991. 11 U.S.C. 547.1 By granting defendant Bank of New England Corporation (Bank)'s trustee's motion for summary judgment the bankruptcy court ruled, without opinion, that plaintiff Lacy G. Newman (Newman) and defendant Bank had in fact contracted by June 18, 1990, when Newman started work. Newman v. Bank of New England Corp., 187 B.R. 405, 409 ______ ____________________________  ____________________ 1. 11 U.S.C. 547 provides in relevant part: (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-- (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such a transfer was made; (3) made while the debtor was insolvent; (4) made-- (A) on or within 90 days before the date of the filing of the petition . . . . -2- (Bankr. D. Mass. 1995). On Newman's appeal the district court reversed, stating that, on the record before it, it was not possible to tell whether there was an agreement before the written contract in November. Upon remand for trial, the bankruptcy court found "there was no definite agreement until November 1, 1990." On Bank's appeal the district court affirmed. On Bank's further appeal, we too affirm. The contractual problem arose because of the provisions of the bankruptcy laws and the desire of Newman, in no way opposed by Bank, that in case his employment contract was terminated without cause,2 his damages would be secured. The facts were these. In May, 1990 Bank and Newman began consideration of the latter's becoming employed as a senior vice president. There were, of course, talks about terms, but by June 18, the parties, as evidenced by a written memorandum, had agreed that Newman's employment was for two years; his title was to be Senior Vice President; his annual salary was $225,000, with a guaranteed bonus the first year of $25,000; there was to be a relocation bonus and expenses, and an option for 35,000 shares of common stock with standard anti-dilution provisions. Particularly where Newman began working, if the matter had ended there, this might have been  ____________________ 2. It is disputed whether the Chapter 7 proceedings terminated the contract. The successor bank did not adopt it. The bankruptcy court's finding in Newman's favor is too clearly correct to call for further discussion. -3- a typical case permitting a finding of an established contract even though the parties planned a writing that might add minor details. Chedd-Angier Prod. Co. v. Omni ________________________ ____ Publications Int'l, 756 F.2d 930, 935 (1st Cir. 1985). The __________________ matter, however, did not stop there. The memorandum indicated that there was to be added a provision to the effect that in case of termination without fault on Newman's part, damages were to be secured to protect him from having to claim with ordinary creditors. Bank agreed in principle - - apportionment among its creditors would be of no consequence to it. The problem, as recognized in the memorandum, was the needed approval of the bank regulators. This matter was of consequence to Newman, who had an unhappy memory of what happened to his severance claim when employed by a previous bank that went into receivership. The present resolution took some four months. Partly responsible, as the bankruptcy court noted, was the fact that Bank's senior counsel "had neither previously written an employee or severance agreement nor understood the applicable banking regulations [and] struggled to draft a final document." Thereby went the passage of time. This produced an unusual situation. If full expression of the promised severance provision was an essential matter, Rosenfield v. United States Trust Co., 290 __________ _______________________ Mass. 210, 216, 195 N.E. 323, 325 (1935), Newman went four -4- months without any contractual protection at all in order to obtain an agreement in which it was positively assured. Without mentioning this dilemma the bankruptcy court found that Newman had in fact chosen the positive security route. We see possible grounds for this conclusion. In the first place, the importance of being secured was high in Newman's mind not only from past experience, but especially because Bank was a "troubled institution." He was not in need of this particular employment; he had other offers. Against waiting for final resolution, however, Bank had agreed that it was willing to afford security and to work jointly in appeasing the bank regulators. It had even agreed to work out some other device if the regulators did not come through. Might not this be enough so that there was a definite June contract, the eventually selected form to be but a detail? Could this not have been claimed if the Bank had discharged Newman in October? There was, however, a further reason. The bankruptcy court found that the various severance packages that were considered "varied as to amount and terms." "Varied" was an understatement. The record shows that amounts differed so substantially that Newman might well have delayed over this aspect alone. Taken altogether, we can accept the bankruptcy court's finding that there was no completed June contract. -5- Hence the funds deposited in escrow were in connection with a November agreement, and thus reachable. Affirmed. _________ -6-